UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JANE STEPHENS EVANS** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 4:21-cv-01557-ACA** |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

Plaintiff Jane Stephens Evans appeals the Social Security Commissioner's (the "Commissioner") denial of her claim for a period of disability and disability insurance benefits. (Doc. 1). Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

Ms. Evans filed an application for a period of disability and disability insurance benefits alleging disability beginning December 31, 2015.[1] (R. 41; 153–56). The Commissioner initially denied Ms. Evans's claim (r. 90–94) and, after a

---

[1] Ms. Evans originally alleged that she became disabled on September 1, 2012. (R. 153–56). She later amended her alleged onset date to December 31, 2015. (R. 41).

hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision (r. 10–22). Ms. Evans then requested review of the decision and the Appeals Council dismissed Ms. Evans's request as untimely. (R. 2–6). Ms. Evans appealed to this court and the judge who presided over that appeal remanded the matter for further proceedings. (*See* R. 801). The Appeals Council set aside the earlier determination and denied Ms. Evans's request for review. (R. 801–06). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Evans had not engaged in substantial gainful activity since her alleged onset date of December 31, 2015. (R. 12–13). The ALJ also found that Ms. Evans's degenerative disc disease, peripheral neuropathy,

3

obstructive sleep apnea, Achilles tendinopathy and peritendonitis, plantar fascia enthesopathy, dysautonomia, endometriosis, lumbar radiculopathy, obesity, mood disorder, and personality disorder were severe impairments, but that her hypothyroidism, vertigo, and bladder incontinence were non-severe impairments. (R. 13). The ALJ found that Ms. Evans's blurred vision and left shoulder surgery were not medically determinable impairments. (*Id.*). But the ALJ concluded that Ms. Evans does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Subpart 404, Appendix 1. (R. 13–16).

After considering the evidence of record, the ALJ determined that Ms. Evans had the residual functional capacity to perform:

> light work as defined in 20 C.F.R. 404.1567(b) except she could occasionally life and/or carry 20 pounds and frequently lift and/or carry 10 pounds; sit six of eight hours, stand and/or walk six of eight hours; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, crouch, kneel and crawl; avoid concentrated exposure to extreme cold, humidity and vibration, avoid all exposure to workplace hazards, for example dangerous machinery and unprotected heights. The claimant can understand, remember, and carry out simple instructions, can maintain attention and concentration [for] two-hour periods at a time, can have occasional interaction with the general public, frequent interaction with co-workers. The claimant can adapt to routine and infrequent workplace changes, and perform jobs that do not require a production rate or pace.

(R. 16–20). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Evans could not perform her past relevant

work as a payroll clerk, bookkeeper, office manager, or teacher aid II. (R. 20–21). Relying on testimony from a vocational expert, the ALJ concluded that through her date of last insured, jobs existed in the national economy that Ms. Evans could perform, including marker, mail clerk, and cashier II. (R. 21–22). Accordingly, the ALJ found that Ms. Evans was not under a disability as defined by the Social Security Act on December 31, 2015, her date last insured. (R. 22).

## IV.  DISCUSSION

Ms. Evans asks the court to reverse the Commissioner's decision because the ALJ (1) incorrectly classified her Meniere's Disease as a non-severe impairment; (2) did not consider whether the combination of her SI Joint issues, lower back disc degeneration, left Achilles tendon, and sural nerve issues constitute an equivalent to a listed impairment; (3) did not properly consider whether Ms. Evans's impairments meet or equal Listing 12.06 and Listing 12.15; and (4) did not properly weigh her subjective pain testimony. (Doc. 9 at 1–4). The court considers each issue in turn.

### 1.  Harmless Error in Classification of Meniere's Disease

Ms. Evans first argues that the ALJ erred in not classifying her Meniere's Disease as a severe impairment. (Doc. 9 at 1–2). "[T]he finding of any severe impairment" at step two of the sequential evaluation process is sufficient for an applicant to move on to step three. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Because an ALJ considers an applicant's medical condition as a whole in step

5

three, not only the impairments classified as severe, as long as the applicant moves on to step three, errors at step two are harmless. *See id.*

Despite not considering Ms. Evans's Meniere's Disease to be a severe impairment, the ALJ determined that Ms. Evans suffered numerous other severe impairments that allowed her application to proceed. (R. 13). Thus, Ms. Evans's contention that the ALJ failed to consider her Meneire's Disease a severe impairment is at most harmless error. *See Jamison*, 814 F.2d at 588.

2. Disabilities that are an equivalent to a listed impairment

Next, Ms. Evans argues that her degenerative disc disease, and pain in her SI joint, left Achilles tendon, and sural nerve all equal a listed impairment because when combined, they cause her severe pain when lifting anything weighing more than ten pounds. (Doc. 9 at 2).

A claimant bears the burden of proving that she meets or equals a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (quotation marks omitted). "To equal a listing, the medical findings must be at least equal in severity and duration to the listed findings." *Id.* (quotation marks omitted).

In her decision, the ALJ stated that that she considered all the listed impairments in 20 C.F.R. Part 404, Appendix 1, but concluded that "the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 13). The ALJ analyzed Ms. Evans's degenerative disc disease and lumbar radiculopathy—which causes SI joint pain—as disorders of the spine and found that because Ms. Evans's subsequent orthopedic records exhibit a normal gait pattern, these impairments do not meet or equal a listed impairment. (R. 14; *see* R. 590). The ALJ found that Ms. Evans's normal gait pattern also prevented her peripheral neuropathy—which causes her sural nerve pain—from being a severe neurological impairment under Listing 11.14. (R. 14; *see* R. 590). Finally, the ALJ found that Ms. Evans's Achilles tendinopathy did not meet or equal the criteria of any listed impairment. (R. 15).

Ms. Evans advances no specific argument and cites no evidence in support of her contention that these various impairments, when combined, equal a listing. Ms. Evans argues in conclusory fashion that "[a]ll of these issues add up to meet your requirements because by themselves [each] one doesn't seem that bad, they might be manageable but put all together it is severe pain to lift anything above 10lbs just once in a week or preferably a month sits me down for a few days." (Doc. 9 at 2). This explanation does not meet Ms. Evans's burden to prove she meets or equals a listed impairment. Nor does it explain why, despite her normal gait pattern, the

ALJ's opinion is incorrect. To the extent Ms. Evans contends that her combination of impairments equal a listing because she cannot lift more than ten pounds, Ms. Evans has not shown how that limitation, standing alone, equals the severity and duration of any listed impairment.

Ms. Evans next contends that her SI joint pain, lower back disc degeneration, left Achilles tendon, and sural nerve pain equal a listed impairment because she cannot wear shoes due to an injury she suffered in 2021. (Doc. 9 at 2–3). She cites to an Occupational Safety and Health Administration regulation that requires employees to wear protective footwear while on the job. (*Id.* at 3). But an impairment that began in 2021 is not relevant to Ms. Evans's appeal; the court can only consider evidence that relates to the "period on or before the date of the ALJ's hearing decision." *Hargress v. Social Sec. Admin.*, 883 F.3d 1302, 1309 (11th Cir. 2018) (cleaned up); *see also Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("[W]hen the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.").

Because Ms. Evans admits that her injury that allegedly prevents her from wearing footwear occurred in 2021, four years after her ALJ hearing decision, the court cannot consider this injury when reviewing her appeal.

3. Listings 12.06 and 12.15

Ms. Evans's third argument is that the ALJ erred by finding she does not meet Listing 12.06 and Listing 12.15. (Doc. 9 at 3–4). Listing 12.06 covers anxiety and obsessive-compulsive disorders and Listing 12.15 covers trauma- and stressor-related disorders. Both Listing 12.06 and Listing 12.15 "have three paragraphs, designated A, B, and C." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2. To meet either Listing, a claimant's impairment must either "satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* It is Ms. Evans's burden to prove that she meets either Listing and thus "is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

For Listing 12.06, paragraph A requires medical documentation of either anxiety disorder, panic disorder or agoraphobia, or obsessive-compulsive disorder. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06A. Anxiety disorder is "characterized by three or more of the following:" restlessness; becoming easily fatigued; having difficulty concentrating; irritability; muscle tension; or sleep disturbance. *Id.* § 12.06A1. For Listing 12.15, paragraph A requires medical documentation of (1) a claimant being "[e]xpose[d] to actual or threatened death, serious injury, or violence;" (2) "[s]ubsequent involuntary re-experiencing of the traumatic event;" (3)

"[a]voidance of external reminders of the event;" (4) [d]isturbance in mood and behavior; and" (5) "[i]ncreases in arousal and reactivity." *Id.* § 12.15A.

For both Listing 12.06 and Listing 12.15, paragraph B requires either an extreme limitation of one of the following, or a marked limitation of two of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. *Id.* § 12.06B, 12.15B.

Paragraph C for both Listing 12.06 and Listing 12.15 requires that the "mental disorder in this listing category is serious and persistent," meaning that the claimant has medical documentation that they have had "the disorder over a period of at least 2 years," the claimant receives medical or mental health treatment "that is ongoing and that diminishes the symptoms and signs of [the] mental disorder," and that the claimant "ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.* § 12.06C, 12.15C.

As for Ms. Evans's claim that she meets Listing 12.06, Ms. Evans alleges that her anxiety causes her muscle tension, sleep disturbance, makes her easily fatigued and restless, and makes it difficult to concentrate (doc. 9 at 3), which would meet the requirements for paragraph A. Ms. Evans also argues that her anxiety prevents her from being able to understand, remember, or apply information, or concentrate, persist, or maintain pace (*id.*), which would meet the requirements for paragraph B.

10

But there is no medical documentation to support Ms. Evans's claims that her anxiety causes muscle tension, sleep disturbance, fatigue, or restlessness or makes it difficult for her to concentrate. To the contrary, as the ALJ found, Ms. Evans's counselor noted that Ms. Evans's anxiety was well treated with medication. (R. 20; *see* R. 568; 582). Therefore, Ms. Evans has not shown that she meets the requirements of paragraph A for Listing 12.06.

With respect to the paragraph B criteria, Ms. Evans asserts in conclusory fashion that her anxiety impairs her ability to understand, remember, or apply information, or concentrate, persist, or maintain pace. (Doc. 9 at 3). But the ALJ found that she has only moderate limitations in these criteria. (R. at 15). Further, the ALJ also explained that Ms. Evans's counselor noted that Ms. Evans's deficiencies in concentration, persistence, or pace are mild. (R. 20; *see* R. 568). Ms. Evans makes no specific challenge to these findings which are supported by "evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks omitted). Therefore, Ms. Evans has not shown that the ALJ erred in finding that she does not have at least two marked limitations or one extreme limitation sufficient to satisfy the paragraph B criteria of Listing 12.06.

Regarding Ms. Evans's claim that she meets Listing 12.15, Ms. Evans has provided no evidence that she has been diagnosed with a trauma- or stressor-related

disorder. Ms. Evans contends that she developed post-traumatic stress disorder from her parents' deaths that causes her panic attacks and prevents her from leaving her home. (Doc. 9 at 3–4). But post-traumatic stress disorder was not mentioned in Ms. Evans's hearing in front of the ALJ (R. 41–57), was not included in her application for disability benefits (R. 179), nor does Ms. Evans cite to any place in the administrative record where a qualified professional diagnosed Ms. Evans with PTSD. (*See* docs. 9, 11). Because it is Ms. Evans's duty to produce evidence in support of her claim of disability, the ALJ did not err in failing to find that her PTSD meets Listing 12.15.

### 4. Subjective Pain Testimony

Finally, Ms. Evans argues that the ALJ did not adequately consider her subjective pain testimony because she is on controlled substances, cannot sit or stand for long at one time, is often dizzy, prone to fall, and cannot wear proper footwear due to an injury. (Doc. 9 at 4). Ms. Evans asserts that all these symptoms would prevent her from working. (*Id.*). As previously discussed, *see supra* p. 8, Ms. Evans's inability to wear proper footwear due to an injury that occurred in 2021 is not relevant to her appeal. Therefore, the court's analysis will focus on Ms. Evans's other alleged errors with respect to her pain testimony.

A claimant attempting to establish disability through testimony of pain or other subjective symptoms must show "(1) evidence of an underlying medical

12

condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). "If a claimant testifies as to h[er] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Id.* at 1210 (quotation marks omitted).

Ms. Evans testified that she had severe vertigo that causes dizziness, although it is helped by a surgery in 2015 that put a tube in her ear and valium to keep her from falling due to her dizziness. (R. 42–43, 49). She testified that her back pain from her degenerative disc disease and lumbar stenosis causes her to be unable to sit or stand for long periods of time due to pain. (R. 46, 48). In addition, Ms. Evans also testified that she takes Klonopin and Valium that make her drowsy. (R. 53–54).

The ALJ found that Ms. Evans's dizziness due to her Meniere's disease was controlled by medication. (R. 13; *see also* R. 679). The ALJ also considered Ms. Evans's testimony that her back pain affected her ability to sit and stand for periods of time, as well as her inability to walk without a cane due to her fear of falling. (R. 17). But the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the

13

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 18). The ALJ found that Ms. Evans reported to her doctors that her dizziness and back pain were controlled by medication. (R. 13, 18–19; *see* R. 676, 679). As for Ms. Evans's claim that the controlled substances she takes make her drowsy, the ALJ considered that evidence (r. 18) but found that "the alleged side effects are insignificant because the claimant never reported side effects to any of her health providers" (r. 19). A claimant's failure to report side effects to her physician is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).

Thus, the ALJ did not ignore medical evidence that supports Ms. Evans's subjective complaints. Rather, the ALJ explicitly acknowledged that evidence but found that Ms. Evans's testimony, when viewed in the light of her own reports of her condition to her doctors, did not establish that Ms. Evans was as limited as she alleged. (*See* R. 18–19). This court may not reweigh the evidence or substitute its judgment for the ALJ, even if the evidence preponderates against the ALJ's finding. *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59.

## V. CONCLUSION

For the reasons above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the decision. As such, the court **WILL AFFIRM** the Commissioner's final decision. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this January 24, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE